UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| CYRUS II PARTNERSHIP | § § | CASE NO. 04-43718-H4-11 (Chapter 11) |
| DEBTOR. | § § | |

### EMERGENCY MOTION TO MODIFY TO STAY TO PERMIT KEEPER TO MAINTAIN POSSESSION AND CONTROL OF PROPERTY

THIS IS A MOTION FOR RELIEF FROM THE AUTOMATIC STAY. IF YOU OBJECT TO THE GRANTING OF RELIEF FROM THE STAY, YOU SHOULD CONTACT THE MOVANT IMMEDIATELY TO TRY TO REACH AN AGREEMENT. IF YOU CANNOT REACH AN AGREEMENT, YOU MUST FILE A WRITTEN RESPONSE AND SEND A COPY TO MOVANT AT LEAST FIVE BUSINESS DAYS PRIOR TO THE HEARING AND YOU MUST ATTEND THE HEARING. THE COPY SENT TO THE MOVANT MUST BE DELIVERED BY HAND OR BY ELECTRONIC DELIVERY IF IT IS SENT LESS THAN FIVE BUSINESS DAYS PRIOR TO THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE HEARING MAY BE AN EVIDENTIARY HEARING AND THE COURT MAY GRANT OR DENY RELIEF FROM THE STAY BASED ON THE EVIDENCE PRESENTED AT THIS HEARING.

Wells Fargo Bank Minnesota, N.A. ("Wells Fargo"), Trustee under a Pooling and Servicing Agreement dated November 1, 1999, for the Merrill Lynch Mortgage Investors Inc. Commercial Mortgage Pass-through Certificates Series 1999-C1 (the "Trust"), through its Special Servicer and Agent, ORIX Capital Markets, LLC ("ORIX"), a secured creditor and party-in-interest in this Chapter 11 case, files this Emergency Motion to Modify Stay to Permit Latter & Blum, as keeper of the Arlington Apartments Property, as it has been since March

2002, to Maintain Possession and control of the Property. In support of its motion, the Trust represents as follows:

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G). The Court may grant the relief requested in this motion pursuant to 11 U.S.C. §§ 362(d) and 362(f), Fed. R. Bankr. P. 4001 and Bankruptcy Local Rule 4001(d).

## SUMMARY OF RELIEF REQUESTED

2. The Trust seeks emergency relief from the automatic stay imposed by Section 362 of the Bankruptcy Code so that the debtor-in-possession does not displace the keeper of the Property (as defined below), so as to maintain the pre-petition status quo concerning the Property pending entry of additional orders by this Court. This case was commenced today, September 29, 2004, by the Debtor without any planning or thought as to maintaining the Property and pursuing this case in a business like manner. The commencement of the case effectively displaces the keeper from the management and operation of the Property. Similarly, the case was filed without any view toward use of cash collateral or obtaining first day orders that are required to preserve and protect the Property and the Chapter 11 estate. To avoid immediate and irreparable harm to the Property, the Debtor's estate, the residents of the Property and the Trust, it is critical that the Court grant emergency relief from the automatic stay in order to maintain the keeper as designated operator of the Property.

## BACKGROUND

3. The Trust is the holder in due course of certain loan documents executed in connection with a loan to Cyrus II Partnership (the "Debtor") in the original principal amount of $6.4 million (the "Loan"). The Loan was originated by and through other lenders, who sold it

and the related documents (collectively, the "Loan Documents") to the investors in the Trust. ORIX is the Special Servicer and Agent for Wells Fargo.

4. The Loan was originated in 1999. The Debtor executed the note and mortgage through its general partner, Bahar Development, Inc. ("Bahar"). Mondona Rafizadeh, a limited partner of Debtor and the President of Bahar, guaranteed the note and mortgage. A true and correct copy of the note, mortgage, security interest, and guaranty are attached hereto as Exhibits A through D, respectively. The Loan Documents give the Trust a duly perfected, first-priority security mortgage on the property commonly referred to as the Arlington Apartments located in Harvey, Louisiana (the "Arlington" or the "Property"). The Trust's security interest includes a duly perfected and valid security interest in all rents and profits from the Property, together with an assignment of leases and rents as set forth more fully in the Loan Documents. The rents and profits from the leases and subleases at the Property constitute cash collateral of the Trust pursuant to section 363 of the Bankruptcy Code.

5. In the spring 2001, ORIX became gravely concerned about the condition of the Arlington and spent the following year attempting to have Cyrus address the serious life, safety, and health issues at the Arlington to no avail. Many units were uninhabitable due to flood, fire, mold, and leaking roofs, and a vast number of similar health and safety issues persisted even in the occupied units, such as extensive mold, mushrooms growing from the walls and carpets, and inoperable appliances.

6. On January 25, 2002, ORIX sent the Debtor a default letter as a result of several independent breaches of the note and mortgage (including the failure to address a substantial number of the deficiencies identified nearly a year earlier). The Debtor failed to cure these defaults and committed additional default. Because Cyrus continued to be in default of these

terms more than thirty days after notice from ORIX, each of these defaults became an "Event of Default" under the Note and Mortgage as of February 25, 2002, which made the debt immediately due and payable without further notice or demand. Mortgage, § 20(k). In addition, Cyrus committed a payment default on March 6, 2002, which was an immediate "Event of Default" without notice. On March 13, 2002, ORIX filed a foreclosure action in Louisiana state court (the "Foreclosure Action"). The Louisiana State Court ordered that the Property be seized on March 13, 2002 and a property management company, Latter & Blum Property Management, installed as its keeper under applicable Louisiana law. The keeper has remained in place for more than two-and-a-half years.

7. After filing the Foreclosure Action, ORIX also discovered that Cyrus committed fraud in order to demonstrate that it qualified for the Loan. Specifically, it submitted fraudulent rent rolls and created phony leases in order to demonstrate to the lender who originated the Loan that the Arlington qualified for the Loan when, in fact, it did not. Fraud is an additional Event of Default.

8. A bench trial was held on July 26–29, 2004.[1] Some former Cyrus employees testified that Cyrus manufactured phony leases for phony tenants in an effort to deceive the original lender into believing the Property met the conditions for the Loan, while three other former employees asserted their Fifth Amendment right against self-incrimination to similar questions. Additionally, hundreds of photographs—taken just days after the keeper was appointed—were admitted into evidence showing the Property's deplorable condition. The

---

[1] Prior to the Foreclosure Action, Cyrus had sued, but had not served, the Trust and ORIX with an injunction which, in effect, mutated into the mirror opposite of the claims that ORIX later filed, *i.e.*, there was no default, the seizure was wrongful, there was no fraud, the property was in good condition, *etc*. Cyrus's lawsuit and the Foreclosure Action were thereafter consolidated for trial. In connection with consolidating the two lawsuits, Cyrus agreed to allow Latter & Blum to remain as the Property's keeper. A copy of that Order is attached as **Exhibit E**.

Louisiana State Court has the matter under advisement, the parties having only last week submitted their post-trial briefing.

9. On September 29, 2004, the Debtor commenced this Chapter 11 case. The Debtor's filing was bare bones. The Debtor's primary asset is the Property, which has been managed by the keeper for the last two and one-half years. On information and belief, the Debtor has no employees nor has it conducted apartment management activities for at least the last two and one-half years.

10. The Court may grant emergency relief from the stay under 11 U.S.C. § 362(f) to grant the limited relief the Trust seeks in order to maintain the status quo and to avoid immediate and irreparable harm pending the opportunity to consider the larger issues surrounding this Chapter 11 case and its proper disposition. Notwithstanding the power of the Court to grant relief from stay under section 362(f) with or without a hearing, the Trust submits that cause exists to grant it relief from the automatic stay pursuant to 11 U.S. §362(d)(1) "for cause, including lack of adequate protection."

11. Specifically, the Trust's interests in the Property are not, and cannot be, adequately protected by the Debtor. This case was filed as a bare bones filing with no request for first day relief that would be required to properly manage the Property and exercise fiduciary duties required of the Debtor. Indeed, the Chapter 11 filing comes on the eve of the closing for the sale of the Property to third party as ordered by the Louisiana State Court. The Trust has not been requested by the Debtor to use the Trust's cash collateral nor is there any suggestion by the Debtor that they have the ability or resources to properly manage and operate the Property. The Trust requests that the Court modify the stay in order to preserve the keeper

as the designated manager and operator of the Property pending the entry of additional orders of this Court.

12. As noted above, Latter & Blum has been managing the Property for more than two years, pursuant to the Loan Documents and two court orders, including the one in which Cyrus agreed that Latter & Blum should remain the Property's keeper. *See* **Exhibit E**.

13. The Trust further submits that cause exists to maintain the status quo at the Property because t the Property is home to approximately 200 families who reside at the Property. As noted above, at the time of the seizure in March 2002, many units were uninhabitable due to serious health and safety issues persisted at the Arlington, even in occupied buildings. Latter & Blum has remedied many of these significant deficiencies. Bills need to paid. Rents need to be collected. Someone needs to be in control of the Property, and the Debtor and its principals, including Mondona Rafizadeh, have demonstrated an inability or unwillingness to do right by the people who call Arlington home.

14. Given the deplorable condition of the Property when it was under the Debtor's control and the results obtained by Latter & Blum during its keepership, good cause exists to modify the stay to permit Latter & Blum to remain as keeper at the Property.

## PRAYER

WHEREFORE, the Trust and ORIX move this Court for an Order modifying the automatic stay and allow Latter & Blum to remain as keeper at the Property. ORIX further prays for all other equitable relief to which it may be entitled.

DATED: September 29, 2004

Respectfully submitted,

**WINSTEAD SECHREST & MINICK P.C.**
910 Travis Street, Suite 2400
Houston, Texas 77002-5895
(713) 650-8400 (telephone)
(713) 650-2400 (facsimile)

By: /s/Joseph G. Epstein
  Joseph G. Epstein
  State Bar No. 06639320
  Berry D. Spears
  State Bar No. 18893300
  Jeffrey L. Joyce
  State Bar No. 11035400

- AND -

R. PATRICK VANCE
(La. Bar No. 13008)
(SDTX. Bar No. 30331)
NAN ROBERTS EITEL (La. # 19910)
CORINNE G. HUFFT (La. #26892)
**JONES, WALKER, WAECHTER, POITEVENT,
 CARRÈRE & DENÈGRE, L.L.P.**
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8000
Telecopier: (504) 582-8011

ATTORNEYS FOR WELLS FARGO BANK
MINNESOTA, N.A., THROUGH ITS AGENT, ORIX
CAPITAL MARKETS, LLC

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing on counsel for the Debtor, by telecopy, and by hand delivery on September 29, 2004.

_____
One of Counsel